At the Assises held for Charles County, in April, 1767, the following bill of exceptions was taken, viz.
The plaintiff, in order to support and prove his location on the plat, of the land in the declaration, offered as a witness one William Simpson, who deposed to the Jury that Richard Llewellin, the father of the plaintiff’s lessor, under whom the plaintiff claims, forty-eight years ago, or thereabouts, employed him and one William Johnson, deceased, to carry the chain on a survey of the said land called-West-wood Manor; that he never was a chain-carrier but once on that land, and then the chain-carriers were sworn; that the survey was then begun at the place represented on. the plat by the letter A. and from thence to the place represented on the plat by the letter B. where the deposition of this witness’s father, Thomas Simpson, deceased, was taken, from thence a north course, the number of perches of which he did not remember, and from the end of the north course, the said survey was run by a cross-line to Zachia Swamp, as near the water as they could go for mire, then through the marsh by a straight course, to the best of his knowledge, down the creek, and at times very near the creek, to the beginning: To encounter which evidence, the defendant’s counsel offered to read in evidence to the Jury a commission, dedimus potestatem^ with the qualifications and proceedings of land commissioners in virtue of the act of Assembly, made in the year 1718.(a) But the counsel for the plaintiff objected to it. And the Court declared their opinion that the same should not be read in evidence to the Jury. To which the de.fendant excepted.
*242 From the notes of A. Chase, Esquire, the following appear to be the objections made to the commission, and the proceedings of the commissioners under it, viz.
1st Objection. It no where appeal's that the commissioners were ever qualified by taking the oaths to the government, and the oath of office. 1 Stra. 255. 260. 2 Sid. 28. 62, 63. 1 Stra. 8. 264. Plow. 485.
2d. It does not appear that there was any choice of the commissioners, by any or all of the parties concerned in point of interest, or that they obstinately refused, or wilfully delayed to make such choice.
3d. It does appear from the whole of the proceedings that they were of one side only. Richard Llewellin petitioned. John Walker and others are said to have intruded, but never appear, and finally the commissioners who did meet, adjudged Llewellin to pay the costs, for that there is not any contending party herein, nor any damage appears to be done.
4th. The commissioners when they did meet, ordered the surveyor to run from the first tree east 100 degrees, north to the second boundary on Westwood Creek, and took a number of depositions to prove the second as well as the first tree, and yet when they come to enter up their judgment or decree, they run east one degree 15 minutes, north to the second tree.
5th. The commissioners have exceeded their authority in varying the courses and setting up boundaries, where there never was any. The power to new mark not being meant to extend so far as to make boundaries, where the certificate calls for none. 3 Fin. (Authority) 420. 417. Salk. 474. Holt, 505. 2 Mod. 202. Holt, 215.
6th. The only person concerned, appears to have been so little satisfied with the justice of the proceedings of the commissioners, that he appealed to the King in Council. Proceedings in August, 1720, dissented to 19th Jidy, 1721.
7th. The proceedings are manifestly unjust on the face of them. The commissioners allow only 1,456 acres to *243 Westwood Manor, though granted for 1600 acres, the plaintiff thereby losing 144 acres, and it is allowed by the defendant to contain 1,416 acres.
8th. The proceedings of the commissioners cannot be given in evidence, because not laid down on the plats, because they are variant in the courses, distances and quantity, and set up a boundary not laid down, and may be compared to the case of a certificate which cannot be offered in evidence, unless it correspond to a tittle with the plat.
Jennings’ notes.
The proceedings of the commissioners are under a law ■which should be remembered with horror, and was introductory of a mode of proceeding, which might deprive a man of his property without a legal trial, and, therefore, it was justly dissented to by the Lord Proprietary.
The commissioners acted with remissness ; they direct the surveyor to run one course, and run another in their return. They direct the surveyor to run 100 degrees north to the first boundary,, and yet determine the line to be east 1 degree 15 minutes north.
Their work is different from the plat. It is a settled rule that the party shall give no evidence of any matters but what is laid down on the plat. Therefore, if the defendant has not made any location of land, as laid out by the commissioners, their proceedings should not be read in evidence.
The differences between the plat, and the running of the commissioners, • are: 1st. on the plat the running is from A. north 84 degrees, east 357 perches to B. a tree and stump. The running of the commissioners is E. 1 degree 15 minutes, N. 351 perches.
2d. The 3d course in the plat, is W. 354 perches. The commissioners’ running is W. 351 perches.
3. On the plat, the E. and W. side of the land, are parallel. In the commissioners proceedings they are not so.
*244 A question arose in this case, concerning the bounds of Westwood Manor. The plaintiff contended, that, as the expressions of the certificate bound him on the W. with Herring Creek, he must adhere to this natural boundajy. The defendant, on the contrary, contended, that the line drawn W. must stop at the intersection of the parallel line. This question of location, was argued before the Jury, as appears from the notes of Thomas Jennings, Esquire, who was counsel for the plaintiff, and who contended in argument for the plaintiff ;
That the expressions in the certificate, were so strong, that they seemed by their manner of arguing, on the other side, to be admitted, and they endeavoured by a detail of suppositions, and circumstances, to weaken the force of the expressions; that circumstances ought not to be deemed sufficient to destroy the express words of a grant, and that in the exposition of a grant, such a construction ought to prevail, as tended to preserve the natural boundaries, the reason of which was obvious, because mathematical lines were subject to much variation, but that boundaries remained always fixed. Therefore, in all constructions of certificates, where the expression is doubtful, the natural bounds ought to be adhered to, as the most certain guide to ascertain the matter; that no rule was better established, than that, where the course and distance in a certificate is repugnant to the natural boundary, or is doubtfully expressed ; the course must be disregarded, and the bounds adhered to. That when the application of this rule was made to the present dispute, it would be found that the matter, however complicated, was nothing more than a common case. The expression in the certificate, binds the land on the W. with Herring Creek, in express terms; to which the defendant objected, and alleged that the land should not extend on the westward beyond the parallel line drawn on the plat, because the certificate mentions the parallel line, and the expression could not be gratified, if the creek was to be the boundary. He supposed that to be the case, and that one of the expressions of the certifi» *245 Gate was to be relinquished; the one which was most uncertain, was the one which ought to be rejected, and the certain expression of a remarkable known natural boundary, ought to be established. Even in case of artificial boun- . . daries, that construction had prevailed, and the course had been departed from, to fix a tree ; this would only be extending a line the same course, to go to a creek; a fortiori^ where the expression was as strong as possible, to denote the land should be bounded on the west with the creek, and that being a certain and fixed description, ought to be strictly adhered to. That the vague expression of a parallel line was opposed to that construction; that it was a very loose expression, and was liable to a variety of constructions ; it is not mentioned to what other line it was to be drawn parallel to. The defendant said, the parallel should answer to the north line, bounding the survey on the east; but the surveyor might perhaps have meant, that the line should be drawn, to be parallel with the west line, i. e. to run to the creek, and so with the creek to the beginning, where it would intersect a line, parallel to that which it run. In short, it was an expression at best, but very vague and uncertain, and subject to a variety of interpretations. That, although surveyors are mentioned in an act of assembly,(a) passed about that time, as being meanly skilled in the art, and had perhaps, no determinate idea of the expressions used in their surveys ; yet no person could mistake a creek. It was the intent of the original taker up, to bind the land by the two creeks, Westxvood Creek on the east, and Herring Creek on the south; and to take up all the land between them. Thus, the first course is east to Westwood Creek, and no number of perches is mentioned; then up the creek, 664 perches. Here the number of perches were mentioned, to ascertain the length of the line, how far up the creek it should go, but in the next line, running west, no number of *246 perches were mentioned; so that the first course which run to Westwood Creek, and the third course which run from Wesixvood Creek to the Herring Creek, had no number of perches mentioned, which strongly denoted that those lines were not to stop till they came to the creeks, and as their length was to be ascertained by the creeks, it was unnecessary to mention any number of perches. It was absurd to suppose so much fine land was excluded between the line and the creek. It would be of dreadful consequence if the natural bounds of land were to be disregarded for such uncertain expressions, and persons. who relied on their natural bounds, and trees, would have their property rendered precarious. Some peace and quiet had been established, by adhering' to nátural bounds, but if the exposition contended for, prevailed, it left matters again at large. Any argument, that by the construction contended for by the plaintiff, the quantity of the land, would be nearer the number of acres, mentioned to be contained in the tract, was entitled to little weight; for all the surveys at that time contained within the lines much more than the certificate specified; that was so common, that the Lord Proprietary endeavoured to introduce surplus warrants, By the land law, in 1699, fifty per cent, was allowed, beyond the number of perches specified in the distance, to reach a creek, or rivulet, which shewed it was thought surveys in those times, might extend one half the number ®f perches more than specified.
.The Jury found a verdict for the defendant.

 The commission is referred to in h&e verba, in the bill of exceptions ; but cannot now be found.

 See preamble to tlie “ act for ascertaining tlie bounds of land,” of April 1'5, in Kilty's Landholder, Appendix 15.